# STATE OF MICHIGAN

# COURT OF APPEALS

PEOPLE OF THE STATE OF MICHIGAN,

      Plaintiff-Appellee,

V

CHRISTOPHER LEE JOHNSON,

      Defendant-Appellant.

FOR PUBLICATION
January 15, 2015
9:00 a.m.

No. 317206
Kent Circuit Court
LC No. 12-009542-FH

Before: M. J. KELLY, P.J., and BECKERING and SHAPIRO, JJ.

SHAPIRO, J.

Defendant, Christopher Lee Johnson, was convicted by a jury of second-degree home invasion, MCL 750.110a(3), and sentenced as a fourth-offense habitual offender, MCL 769.12, to 8 to 25 years' imprisonment. He appeals his conviction and sentence as of right. We affirm.

## I. PERTINENT FACTS AND PROCEDURAL HISTORY

The home of Nicholas Simon and Serena Norris was broken into on April 18, 2012. The perpetrator gained access to the home by kicking in two different doors, as evidenced by the broken frames and a boot mark impression left on one of the doors. Among the items stolen from the home were a 52-inch, flat-screen television and several pieces of jewelry, including an heirloom ring with a cross on it and a class ring. Investigation eventually led police to Jackie Sturgis, who admitted to the home invasion and implicated defendant.

At trial, Sturgis testified that she helped defendant commit the home invasion. She stated that she drove defendant to the home and saw him go around the back. Through a window she viewed defendant inside the house and then witnessed him exit the home with various items, including a large television. She thereafter drove defendant to his brother's home, where defendant lived, and helped defendant unload some of the stolen items into the garage. She then accompanied defendant to Grand Rapids, where defendant sold the television. She also, per defendant's instructions, sold the ring with a cross on it and gave defendant the proceeds.

Chet Wood, who was incarcerated with defendant while awaiting trial, testified that he and defendant spoke about the charged home invasion. Wood testified at trial that he asked defendant "bottom line, did you do it?" Defendant responded "yeah, but I can't tell them that." Wood also recounted a discussion with defendant in which defendant told him that "between sellin' heroin and breakin' into houses, he was gettin' about 600 bucks a day." He also testified

1

that Defendant told him that he had female accomplices—including "some Jackie girl"—and that some of them were going to testify against him.

Another witness testified that on defendant's request he pawned a class ring that was later determined to have come from the burglarized home and gave defendant the proceeds.

The prosecution also introduced testimony from Rory Bancroft who gave testimony regarding a separate burglary, linked to the defendant that bore characteristics similar to those of the charged offense. She testified that the person who broke into her home had gained access by breaking in the front door and that she had observed a large footprint on the door. At trial, the prosecution showed Bancroft several items found in defendant's brother's garage, which she identified as having been stolen in the break-in of her home.

## II. OTHER-ACTS EVIDENCE

On appeal, defendant argues that the trial court erred in allowing Bancroft to testify and that evidence concerning the invasion of Bancroft's home was inadmissible under both MRE 404b(1) and MRE 404(b)(2). Defendant failed to preserve this evidentiary issue for appeal by raising it in the trial court. Thus, our review is for plain error affecting defendant's substantial rights. *People v Hawkins*, 245 Mich App 439, 447; 628 NW2d 105 (2001), citing *People v Carines*, 460 Mich 750, 763-764; 597 NW2d 130 (1999). Defendant also claims that his trial counsel was ineffective for failing to object to admission of this evidence.

### A. MRE 404(b)(1)

MRE 404(b)(1) sets out the substantive rule regarding admission of "other crimes, wrongs, or acts" of a person, including an accused. It provides:

> Evidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show action in conformity therewith. It may, however, be admissible for other purposes, such as proof of motive, opportunity, intent, preparation, scheme, plan, or system in doing an act, knowledge, identity, or absence of mistake or accident when the same is material, whether such other crimes, wrongs, or acts are contemporaneous with, or prior or subsequent to the conduct at issue in the case.

As MRE 404(b)(1) makes clear, "Michigan's Rules of Evidence proscribe the use of character evidence to prove action in conformity therewith." *People v Starr*, 457 Mich 490, 494; 577 NW2d 673 (1998). Specifically, MRE 404(b)(1) prohibits the introduction of evidence of an individual's "other crimes, wrongs, or acts" for such a purpose. However, evidence of other crimes, wrongs, or acts is admissible under MRE 404(b) if (1) the evidence is offered for a proper purpose and not to prove the defendant's character or propensity to commit the crime; (2) it is relevant to an issue or fact of consequence at trial; and (3) the probative value of the evidence is not substantially outweighed by the danger of unfair prejudice. *People v VanderVliet*, 444 Mich 52, 74-75; 508 NW2d 114 (1993).

Brancroft's testimony was relevant to the identification of the perpetrator of the charged home invasion given that the burglary of her home, to which defendant was linked, was highly

similar to the charged crime in the way they were carried out and the location of the recovered stolen goods. "[E]vidence of similar misconduct is logically relevant to show that the charged act occurred where the uncharged misconduct and the charged offense are sufficiently similar to support an inference that they are manifestations of a common plan, scheme, or system." *People v Sabin (After Remand)*, 463 Mich 43, 63; 614 NW2d 888 (2000). In this case, both home invasions shared particularized common features. They were each accomplished by kicking in a door at an unoccupied home, leaving a large boot mark impression on the door, and, in each, some of the items stolen were stored at defendant's brother's home, where defendant was living. The substantial similarity in which these crimes were accomplished, and the similarity with respect to where the stolen items were thereafter taken were relevant to, and probative of, identity. See MRE 401; *Sabin (After Remand)*, 463 Mich at 66.

We agree that evidence that defendant committed another home invasion carried with it the potential that the jury would consider it as propensity evidence and rely upon that consideration in reaching a verdict. However, on the facts of this case, we do not find that such prejudice "substantially outweighed" its probative value. MRE 403. First, the probative value of the evidence as to identity was substantial given their signature characteristics. Second, the trial court gave the jury a limiting instruction directing it to consider the other acts evidence only for its permissible purpose. See MRE 105. Third, though probative of identity, the overall impact of this testimony was minor in the context of the other evidence of guilt which included defendant's own admission of guilt and identification of his accomplice by name, as well as detailed testimony from that accomplice and others.

Accordingly, because the other acts evidence was offered for a proper purpose and its probative value of the evidence was not substantially outweighed by the danger of unfair prejudice, we conclude that its admission was not barred by MRE 404(b)(1).

## B. MRE 404(b)(2)

MRE 404(b)(2) governs the procedural requirements for admission of MRE 404(b)(1) evidence. It provides that such evidence may only be admitted where the prosecutor provides reasonable pretrial notice of such evidence or, if he fails to do so, if the trial court excuses such failure on good cause shown. The provision reads:

> The prosecution in a criminal case *shall* provide reasonable notice in advance of trial, or during trial if the court excuses pretrial notice on good cause shown, of the general nature of any such evidence it intends to introduce at trial and the rationale, whether or not mentioned in subparagraph (b)(1), for admitting the evidence. If necessary to a determination of the admissibility of the evidence under this rule, the defendant shall be required to state the theory or theories of the defense, limited only by the defendant's privilege against self-incrimination. [Emphasis added.]

3

A review of the record confirms that the prosecution failed to adhere to this notice provision. See *Hawkins*, 245 Mich App at 453. No written notice of the intent to introduce other acts evidence is contained in the record[1] and the prosecution has not referred us to any proceeding in which oral notice was provided. The record also makes clear that the prosecution did not seek an exception from this requirement on good cause shown.

We reject the prosecution's argument that MRE 404(b)(2) should not be applied as written. The language of the rule is both unequivocal and mandatory given its use of the word "shall," i.e., "the prosecution in a criminal case shall provide reasonable notice in advance of trial . . . of the general nature of any such evidence it intends to introduce at trial[.]" It is well-settled that "use of the word 'shall' indicates that . . . [the directed action] is mandatory and imperative." *Scarsella v Pollak*, 461 Mich 547, 549; 607 NW2d 711 (2000) (citations omitted). Our Supreme Court recently reemphasized this principle:

> Where a statute provides that a public officer "shall" do something within a specified period of time and that time period is provided to safeguard someone's rights or the public interest, as does the statute here, it is mandatory, and the public officer is *prohibited from proceeding* as if he or she had complied with the statutory notice period. [*In re Bail Bond Forfeiture*, 496 Mich 320, 339; 852 NW2d 747 (2014) (emphasis added).]

Given the statutory language, we must therefore conclude that the prosecution was "prohibited from proceeding" with introduction of the other acts evidence given its failure to provide the mandatory notice as required by MRE 404(b)(2) or otherwise show good cause during trial for failing to provide the requisite notice. *Id.* at 339.

Though the issue is settled by the plain text of the rule, we note that this conclusion is also supported by the Supreme Court's analysis in *VanderVliet*, 444 Mich 52, and its amendment of MRE 404(b)(2) following that decision, *People v VanderVliet*, 445 Mich 1205; 520 NW2d 338 (1994). Prior to *VanderVliet*, introduction of other acts evidence against an accused was sharply limited by the rule in *People v Golochowicz*, 413 Mich 298; 319 NW2d 518 (1982), which interpreted MRE 404 as a rule of exclusion, not inclusion, as was later determined in *VanderVliet*. *VanderVliet*, 444 Mich at 64-65.

*VanderVliet* directed trial court judges to render individual decisions concerning such evidence not in the abstract but with consideration of the "shifting mosaic of consequential facts" from case to case. *Id*. at 87. It also "caution[ed] the bench and bar that other acts evidence must move through a permissible intermediate inference, such as mens rea, lack of accident, or common plan or scheme, to be relevant to actus reus." *Id*. "Absent such intermediate inference, the other acts evidence bears only on propensity and is inadmissible." *Id*.

---

[1] The only item in the record cited in the prosecution's brief was its witness list which contained Bancroft's name. However, it provided no information as to her identity or the nature of her testimony.

Given the fact that other acts evidence is often *both* probative and prejudicial, the *VanderVliet* Court noted that the determination of admissibility of other acts evidence could be "extraordinarily difficult." *Id*. at 89.[2] Accordingly, the Supreme Court opined that such decisions should not have to be rendered during "the inherent complexity . . . of the modern day trial[,]" *id*. at 87, and announced its intent to "require[] the prosecution to give pretrial notice of its intent to introduce other acts evidence at trial," *Id*. at 89. It went on to state that, "[a] notice requirement prevents unfair surprise and offers the defense the opportunity to marshal arguments regarding both relevancy and unfair prejudice." *Id*. at 89 n 51.

Not long after *VanderVliet*, that rule change was effectuated by adding the language of MRE 404(b)(2) and as noted in *Hawkins*, 245 Mich App at 454-455, the

> essential value and underlying aims of MRE 404(b)(2) are (1) to force the prosecutor to identify and seek admission only of prior bad acts evidence that passes the relevancy threshold, (2) to ensure that defendant has an opportunity to object to and defend against this sort of evidence, and (3) to facilitate a thoughtful ruling by the trial court that either admits or excludes this evidence and is grounded in an adequate record.[3]

The prosecution argues that MRE 404(b)(2) does not mandate that notice be in writing. We agree as the plain text of the rule does not include such a requirement. However, we reject any suggestion that if there is a question whether oral notice was provided, the trial court must hold a hearing and determine whether such oral communication occurred and whether its content satisfied the notice requirement. Such a mechanism would be highly inefficient and unnecessarily place the court in the position of taking testimony from participating counsel as to their recollection of oral communications. It is far simpler, and more consistent with *VanderVliet* to require that the mandated notice be provided either in writing or orally in open court so that both parties and the trial judge, will know as a matter of record whether and what notice was in fact provided. Accordingly, we hold that where the record does not demonstrate compliance by the prosecution with the mandatory notice requirement of MRE 404(b)(2), upon objection by the defense, the trial court shall exclude such evidence absent a showing of "good cause" for the failure to provide such notice.[4] As such, the prosecution's failure to give notice in accordance with MRE 404(b)(2) was plain error. *Hawkins*, 245 Mich App at 453 ("failure to give notice [of prior bad acts evidence] is plain error because the court rule unambiguously requires notice to the defense at some time *before* the prosecutor introduces [it].)."

---

[2] In *Sabin (After Remand)*, 463 Mich at 57 n 5, the Supreme Court noted that even where notice is provided, "the trial court's task is not an easy one."

[3] As *Hawkins* involved a bench trial, any error under MRE 404(b) presented a substantially lower risk of prejudice to the defendant than it would in a jury trial.

[4] The prosecution has not argued that there was good cause for its failure to provide pre-trial notice. Moreover, any such determination must first be made by the trial court.

Having concluded that there was plain error, we must consider whether, in the context of the other evidence, it requires reversal. Reversal is only warranted "when the plain, forfeited error resulted in the conviction of an actually innocent defendant or when an error seriously affect[ed] the fairness, integrity or public reputation of judicial proceedings." *People v Pipes*, 475 Mich 267, 279; 715 NW2d 290 (2006) (quotation marks, citation, and formatting omitted). Based on that standard, we conclude that reversal is not warranted in this case. As discussed earlier, the jury heard detailed testimony from defendant's accomplice that she personally saw defendant break down the door, enter the victim's home several times, each time emerging from the home with several items (matching those the victims reported as stolen). She testified that she and defendant then drove to his brother's garage where he stored several of the items, where they were later found. She also testified that she traveled with defendant to another location where he sold the stolen television. Another witness testified that during a conversation the defendant explicitly admitted his guilt. A third witness testified that defendant asked him to pawn a ring for him that was later identified as belonging to the victim. In response to this evidence, defendant offered no rebuttal. Given these proofs, we cannot say that the "plain, forfeited error resulted in the conviction of an actually innocent defendant or when an error seriously affect[ed] the fairness, integrity or public reputation of judicial proceedings." *Id*.

In sum, we agree that admission of the other acts evidence was error. However, given the overwhelming and unrebutted affirmative evidence of defendant's guilt, independent of the other acts evidence, we conclude that reversal is not warranted in this case.

Defendant also argues that by virtue of his counsel's failure to object to the admission of the other acts evidence on notice grounds, he was deprived of the effective assistance of counsel. We agree that counsel's failure to object fell below an objective standard of reasonableness and that there was no strategic reason for this failure. However, for the same reasons just discussed, we conclude that, but for counsel's error, there is not a reasonable probability that the result of the trial would have been different. See *People v Swain*, 288 Mich App 609, 643; 794 NW2d 92 (2010).

## III. SENTENCING

Defendant next raises a host of unpreserved sentencing issues, which we review for plain error affecting substantial rights. *People v Loper*, 299 Mich App 451, 456-457; 830 NW2d 836 (2013). Defendant first argues that the trial court failed to articulate how it arrived at defendant's sentence and why such a sentence was proportionate. We disagree. "A trial court must articulate its reason for imposing a sentence on the record at the time of sentencing." *People v Conley*, 270 Mich App 301, 312; 715 NW2d 377 (2006). "The articulation requirement is satisfied if the trial court expressly relies on the sentencing guidelines in imposing the sentence or if it is clear from the context of the remarks preceding the sentence that the trial court relied on the sentencing guidelines." *Id*. at 313. Here, the trial court expressly indicated that it had reviewed defendant's Presentence Investigation Report (PSIR) and that it was sentencing defendant within the guidelines. Thus, it satisfied the articulation requirement. *Id*. Moreover, the trial court was not required to articulate why the sentence was proportionate because it was within the guidelines range and was therefore presumptively proportionate. *People v Powell*, 278 Mich App 318, 323; 750 NW2d 607 (2008); *People v Nunez*, 242 Mich App 610, 618; 619 NW2d 550 (2000).

Defendant next argues that the trial court failed to consider various mitigating factors, such as his mental health and substance abuse histories, his family support, and his remorse. However, as defendant readily acknowledges, the trial court was not required to consider such mitigating factors when it sentenced him. *People v Osby*, 291 Mich App 412, 416; 804 NW2d 903 (2011). In any event, defendant's claim is belied by the record, which indicates that the trial court reviewed defendant's PSIR and the information contained therein. Defendant also argues that based on his history of substance abuse, there is an inference that he suffers from a "serious mental disease" that warranted a downward departure, and that the trial court erred by failing to conduct an assessment of his rehabilitative potential. However, defendant cites no authority to support his argument that a downward departure is warranted based on such facts under Michigan's sentencing guidelines. Moreover, there is no record support that defendant actually suffered from a mental illness and we reject defendant's argument that such an illness should be inferred simply because defendant had a history of substance abuse. Finally, there is no requirement for a trial court to conduct a detailed assessment of defendant's rehabilitative potential, despite defendant's claim to the contrary. Defendant also argues that he was entitled to a downward departure for accepting responsibility for his crime. However, he cites no authority that a downward departure is required in such a case. Moreover, a review of the sentencing transcript demonstrates that the defendant did not accept responsibility for his crime.

Defendant next argues that his sentence was "excessive" under state and federal constitutional principles. We assume that defendant is arguing that his sentence constitutes cruel and/or unusual punishment under either US Const, Am VIII or Const 1963, art 1, § 16. However, defendant's sentence was within the recommended minimum sentence range under the legislative guidelines, and therefore constitutes neither cruel nor unusual punishment. *Powell*, 278 Mich App at 323; *People v DiVietri*, 206 Mich App 61, 63-64; 520 NW2d 643 (1994).

Defendant also summarily claims that the trial court relied upon incomplete and inaccurate information in sentencing him. However, defendant's claim that the trial court relied upon incomplete information is anchored to his claims that the trial court should have considered various mitigating factors and fully assessed his rehabilitative potential, which as discussed above, lack merit. Moreover, with respect to defendant's claim that the trial court relied upon inaccurate information, defendant does not identify what information the trial court relied upon that was allegedly inaccurate. Thus, these claims lack merit.

Finally, defendant summarily argues that his trial counsel was ineffective for failing to object to the imposition of his sentence. However, as none of defendant's various arguments relating to the validity of his sentence have any merit, his trial counsel was not ineffective for failing to raise such claims. *Snider*, 239 Mich App at 425.

Affirmed.

/s/ Douglas B. Shapiro
/s/ Michael J. Kelly
/s/ Jane M. Beckering

7