*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

PEOPLE OF THE STATE OF MICHIGAN,

Plaintiff-Appellee,

v

JAMES GERALD GOOLDY,

Defendant-Appellant.

UNPUBLISHED
August 15, 2024

No. 361190
Jackson Circuit Court
LC No. 17-005716-FH

Before: GADOLA, C.J., and PATEL and YOUNG, JJ.

PER CURIAM.

James Gerald Gooldy appeals by leave granted[1] his sentence after pleading guilty to manufacture and/or delivery of controlled substances, second offense, MCL 333.7401(2)(b)(*i*), Jackson Circuit Court Judge Thomas D. Wilson presiding.[2]  After Gooldy's guilty plea, the trial court sentenced him to 8 to 20 years in prison.  On appeal, Gooldy argues that (1) the trial court reversibly erred when he was sentenced by a different judge who did not preside over his earlier plea proceedings, and (2) his sentence was disproportionate. We affirm.  Regarding the first issue, the trial court did not abuse its discretion by denying Gooldy's request to adjourn sentencing or his alternate request to withdraw his plea, which were both premised on the plea-taking judge's absence at sentencing.  Further, the trial court's sentence was not an abuse of discretion.

## I. BACKGROUND

In December 2017, Gooldy was bound over for trial as a third-offense habitual offender, MCL 769.11, on one count of manufacture and/or delivery of ecstasy or MDMA, second offense, MCL 333.7401(2)(b)(*i*).  Thus, Gooldy was charged for an enhanced second drug offense, and as

---

[1] On January 12, 2024, the Michigan Supreme Court remanded this case to this Court for consideration as on leave granted.  See *People v Gooldy*, ___ Mich ___; 999 NW2d 41 (2024).

[2] As discussed herein, the sentencing judge was different from the judge who presided over Gooldy's plea proceedings.

a third-offense habitual offender. The instant case was initially presided over in the circuit court by Judge Thomas D. Wilson. Gooldy was released on bond in May 2019.

The trial court held a plea hearing before Judge Wilson on April 20, 2021, at which Gooldy admitted that he "delivered the controlled substance of ecstasy or MDMA to a third party" on or about December 8, 2017.[3] Gooldy said he was willing to plead guilty *only if* sentenced to probation, and the court responded, "Well all I can tell you is if I'm not going to put you on probation[,] I'll let you withdraw your plea." Gooldy then pleaded guilty to delivery/manufacture of ecstasy, second offense, with the prosecution dismissing the third-offense habitual-offender notice, and the trial court accepted his plea. In taking this plea, the trial court reiterated that "if I'm going to give you [Gooldy] anything other than probation at [sentencing] after [you already served] 33 months in jail, if I find that I've got to give you something more than that then I'll give you the opportunity to withdraw your plea."

The same day it accepted Gooldy's plea, the trial court amended the conditions of its pretrial release order, which as relevant here required that Gooldy personally appear at sentencing, not commit any further crimes, and refrain from using illegal narcotics. Gooldy was scheduled for sentencing on August 5, 2021, but he failed to appear after also missing his presentence interview. The trial court issued a bench warrant for Gooldy's arrest that same day. This would be Judge Wilson's final action on Gooldy's case. On August 6, 2021, the State Court Administrative Office authorized the assignment of Judge Edward J. Grant to the Jackson County circuit court to temporarily replace Judge Wilson. The assignment was limited from August 15, 2021, to December 31, 2021, and stated, "Reason for Assignment: MEDICAL LEAVE."

In September 2021, Gooldy was arrested for possession of drug paraphernalia and on outstanding warrants in this case. Gooldy's sentencing commenced on October 28, 2021, with Judge Grant presiding. Defense counsel at the outset requested an adjournment of sentencing—or, alternatively, an opportunity for Gooldy to withdraw his plea—because of Judge Wilson's absence. The court declined to do so:

> [*Defense Counsel*]: This is a case that Judge Wilson has been very involved with in discussions about resolving this case. Judge Wilson does not do *Cobbs*[4] agreements. So I'm not suggesting that we have a *Cobbs* agreement with Judge Wilson.
>
> *The Court*: All right. Which would have to be on the record.
>
> [*Defense Counsel*]: Absolutely. But we had discussions with Judge Wilson on the record and those discussions were integral to the plea agreement that my

---

[3] This proceeding also involved Gooldy's guilty plea in case number 19-001671-FH, which is not at issue on appeal. In that case, Gooldy pleaded guilty to prisoner possessing contraband, specifically the possession of fentanyl, an offense that occurred while he was jailed in July 2017 for a prior offense.

[4] See *People v Cobbs*, 443 Mich 276; 505 NW2d 208 (1993).

client entered into. . . . And we are asking this court to adjourn this matter so that we can be sentenced in front of Judge Wilson who is much more familiar with the case . . . [and] all the discussions that we've had.

I understand that it is not a *Cobbs* agreement so it is not an official agreement. But the statements made and discussions that we've had with Judge Wilson over the period of several years regarding this case were an, were an important part of the plea from [Gooldy]'s perspective. . . .

* * *

*The Court*: All right. Well there's a reason why we have the court rules and there's a reason why we have a thing called a *Cobbs* agreement, because it has to be placed on the record.

. . .

* * *

[*Defense Counsel*]: And just so we're clear. These were discussions held on the record.

*The Court*: But no promises are made.

[*Defense Counsel*]: Judge Wilson does not make promises.

*The Court*: All right. All right. Your motion is denied. We're going to proceed.

The court ultimately sentenced Gooldy, within the 6-to-10-year minimum guidelines range, to 8 to 20 years' imprisonment, with credit for 997 days served. After discussing Gooldy's education level, his family situation, his failure to appear at the initial sentencing, his multiple failures to previously follow through with drug treatment, the circumstances of this offense and Gooldy's narcotics possession in jail, and other information from his PSIR, the court determined that Gooldy was "not probation material." Specifically highlighting that Gooldy absconded from probation after leaving supervised drug treatment in 2017, the court said, "You don't comply with what you're supposed to do. . . . We're just spinning our wheels. If there's going to be any change[,] you've got to make the change. We can't make the change for you." Gooldy now appeals.

## II. STANDARDS OF REVIEW

"A trial court's ruling on a motion to adjourn is reviewed for an abuse of discretion." *Pugno v Blue Harvest Farms LLC*, 326 Mich App 1, 27; 930 NW2d 393 (2018). This Court also reviews for an abuse of discretion a trial court's decision on a motion to withdraw a plea. *People v Martinez*, 307 Mich App 641, 646; 861 NW2d 905 (2014). "An abuse of discretion occurs when the trial court's decision is outside the range of principled outcomes. Underlying questions of law

-3-

are reviewed de novo, while a trial court's factual findings are reviewed for clear error." *Id*. at 646-647.

Gooldy's sentence is reviewed for reasonableness consistent with the Supreme Court's opinion in *People v Steanhouse*, 500 Mich 453; 902 NW2d 327 (2017). *People v Posey*, 512 Mich 317, 349-352, 357, 359-360; ___ NW2d ___ (2023). Per *Steanhouse*, "the proper inquiry when reviewing a sentence for reasonableness is whether the trial court abused its discretion by violating the 'principle of proportionality' set forth in *People v Milbourn*,[5] 435 Mich 630, 636; 461 NW2d 1 (1990), 'which requires sentences imposed by the trial court to be proportionate to the seriousness of the circumstances surrounding the offense and the offender.' " *Steanhouse*, 500 Mich at 459-460; see also *id*. at 475 (reasonableness review tests "whether the sentence is proportionate to the seriousness of the matter, not whether it departs from or adheres to the guidelines' recommended range."). Gooldy bears the burden of overcoming a presumption of proportionality when appealing a within-guidelines sentence, and must demonstrate that such a sentence "is unreasonable or disproportionate." *Posey*, 512 Mich at 357-359.

## III.  ANALYSIS

Gooldy argues that (1) the trial court reversibly erred when he was sentenced by a different judge who did not preside over his earlier plea proceedings, and (2) his sentence was disproportionate. Regarding the first issue, the trial court did not abuse its discretion by denying Gooldy's request to adjourn sentencing or his alternate request to withdraw his plea, which were both premised on Judge Wilson's absence at sentencing. Specifically, because Judge Wilson was not reasonably available at the time of sentencing, his absence does not entitle Gooldy to resentencing. Further, even if a valid *Cobbs* agreement existed for a lesser sentence, Gooldy was not entitled to withdraw his plea because he committed misconduct after its acceptance and before sentencing. We also conclude that the trial court's sentence was not an abuse of discretion.

### A.  JUDGE WILSON'S ABSENCE AT SENTENCING

Gooldy first contends that the trial court reversibly erred when he was sentenced by a different judge who did not preside over his earlier plea proceedings. As an initial matter, we disagree with Gooldy's argument that the trial court erred because he was sentenced by Judge Grant instead of Judge Wilson. "A defendant is entitled to be sentenced before the judge who accepts the plea, *provided that judge is reasonably available*." *People v Bennett*, 344 Mich App 12, 19; 999 NW2d 827 (2022) (cleaned up; emphasis added). It appears to be undisputed that Judge Wilson was on medical leave and thus *not* available when Judge Grant sentenced Gooldy in October 2021.

Gooldy asserts that resentencing before Judge Wilson is warranted because Judge Wilson was only temporarily unavailable. Indeed, according to the assignment form, Judge Grant was to replace Judge Wilson for a period of only four months. But here, Gooldy's sentencing was only scheduled to a time during Judge Wilson's leave of absence because of malfeasance by Gooldy.

---

[5] *Milbourn* was overruled in part on other grounds by *Steanhouse*.

And while logically it makes some sense to consider the length of an absence when determining whether a judge is truly "unavailable," Gooldy fails to provide substantive analysis about the same or an explanation of how, if at all, these considerations are affected by the aforementioned malfeasance. See *Bronson Methodist Hosp v Mich Assigned Claims Facility*, 298 Mich App 192, 199; 826 NW2d 197 (2012) ("An appellant may not merely announce his position and leave it to this Court to discover and rationalize the basis for his claims, nor may he give [an issue] only cursory treatment with little or no citation of supporting authority.") (quotation marks and citation omitted).

Furthermore, the limited discussion of this question in caselaw indicates that this Court need only consider whether the plea-taking judge was reasonably available *on the sentencing date*. See *People v Humble*, 146 Mich App 198, 200; 39 NW2d 422 (1985)[6] ("The record before us is silent on the question of whether Judge Burrows, a visiting probate judge, was reasonably available *on April 16* to sentence defendant.") (emphasis added).[7] Here, Judge Wilson was not reasonably available at the time of sentencing, and his absence does not entitle Gooldy to resentencing. Accordingly, the trial court did not abuse its discretion by denying Gooldy's request to adjourn sentencing.

## B. JUDGE WILSON'S ASSURANCES AT PLEA-TAKING

This case is complicated by Gooldy's alternate request to withdraw his guilty plea and apparent reliance when pleading guilty on Judge Wilson's comments regarding probation. Specifically, while defense counsel acknowledged repeatedly below that Judge Wilson "does not do *Cobbs* agreements" and that no such agreement existed, at least formally, the circumstances of Gooldy's plea align squarely with the concept articulated in *Cobbs* and its progeny.

We acknowledge that Gooldy does not rely on *Cobbs* on appeal.[8] And defense counsel arguably waived any *Cobbs* issue by disavowing in the trial court the existence of any *Cobbs*

---

[6] Although this Court is not required to follow cases decided before November 1, 1990, see MCR 7.215(J)(1), a published case decided by this Court "has precedential effect under the rule of stare decisis," MCR 7.215(C)(2). See also *Woodring v Phoenix Ins Co*, 325 Mich App 108, 114-115; 923 NW2d 607 (2018) (stating that although this Court is not "strictly required to follow uncontradicted opinions from this Court decided before November 1, 1990," those opinions are nonetheless "considered to be precedent and entitled to significantly greater deference than are unpublished cases.").

[7] We reiterate this Court's concerns from *Bennett* that the rule concerning a judge's unavailability at sentencing "remains ill-defined." *Bennett*, 344 Mich App at 23 n 7. "Consequently, we strongly encourage the adoption of a court rule to precisely define the contours of the rule." *Id*.

[8] See *Bronson Methodist Hosp*, 298 Mich App at 199 ("An appellant may not merely announce his position and leave it to this Court to discover and rationalize the basis for his claims, nor may he give [an issue] only cursory treatment with little or no citation of supporting authority.") (quotation marks and citation omitted); *Mich Ed Ass'n v Secretary of State*, 280 Mich App 477,

agreement with Judge Wilson. See *People v Davis*, 509 Mich 52, 64; 983 NW2d 325 (2022) ("Waiver is the intentional relinquishment or abandonment of a known right, and one who waives an issue cannot later seek appellate review of that issue.") (quotation marks and citation omitted). However, we provide the following discussion to give guidance to the bench and bar concerning *Cobbs* agreements. And for the reasons provided, Gooldy was not entitled to plea withdrawal under *Cobbs*.

"A *Cobbs* agreement is an agreement in which a defendant agrees to plead guilty in reliance on the trial court's preliminary evaluation of the sentence to be imposed." *People v Brinkey*, 327 Mich App 94, 99; 932 NW2d 232 (2019); see also *People v Cobbs*, 443 Mich 276, 283; 505 NW2d 208 (1993) ("a judge may state *on the record* the length of sentence that, on the basis of the information then available to the judge, appears to be appropriate for the charged offense").

"Under a *Cobbs* agreement a defendant is permitted to withdraw his or her guilty plea in the event that the trial court determines that it must exceed the preliminary evaluation." *Brinkey*, 327 Mich App at 99 (quotation marks and citation omitted). *Cobbs* states:

> The judge's preliminary evaluation of the case does not bind the judge's sentencing discretion, since additional facts may emerge during later proceedings, in the presentence report, through the allocution afforded to the prosecutor and the victim, or from other sources. However, a defendant who pleads guilty or nolo contendere in reliance upon a judge's preliminary evaluation with regard to an appropriate sentence has an absolute right to withdraw the plea if the judge later determines that the sentence must exceed the preliminary evaluation. [*Cobbs*, 443 Mich at 283.]

Relatedly, MCR 6.310(B)(2)(b) allows defendants to withdraw a plea "after acceptance but before sentence" if "the plea involves a statement by the court that it will sentence to a specified term or within a specified range, and the court states that it is unable to sentence as stated[.]"

Here, despite Judge Grant's observation at sentencing that "no promises were made" and defense counsel's response that "Judge Wilson does not make promises," that is exactly what appears to have happened at Gooldy's plea proceedings. When Judge Wilson asked Gooldy if he wanted to plead guilty—notably after the judge said he would "probably" sentence Gooldy to probation—Gooldy responded, "I'll, if, *as long as* it's to prob[ation], [if you] release me to probation I'll plead guilty." (Emphasis added.) Judge Wilson when taking the plea stated numerous times and in no uncertain terms that he would permit Gooldy to withdraw the same if the judge ultimately deviated from a sentence of probation, which Judge Wilson indicated might occur if some new and "stark" facts were revealed before sentencing. Thus, Judge Wilson provided a preliminary evaluation of the sentence to be imposed by stating on the record, on the basis of the information then available, that probation appeared to be appropriate. See *Cobbs*, 443 Mich at 283; *Brinkey*, 327 Mich App at 99. Further, consistent with the concept of a *Cobbs* agreement, Judge Wilson allowed that Gooldy could withdraw his plea if the ultimate sentence

---

488; 761 NW2d 234 (2008), aff'd 489 Mich 194 (2011) ("[W]e generally do not consider any issues not set forth in the statement of questions presented.").

deviated from the judge's preliminary evaluation that probation was appropriate. Therefore, Gooldy was arguably entitled to withdraw his plea under *Cobbs* and MCR 6.310(B)(2)(b) when Judge Grant was unwilling to follow Judge Wilson's preliminary evaluation.

But defense counsel did not make this argument, and even if counsel had, the trial court did not abuse its discretion by denying Gooldy's request to withdraw his plea. Specifically, Gooldy waived his right to plea withdrawal because he committed misconduct after Judge Wilson accepted his plea.

> Except as allowed by the trial court for good cause, a defendant is not entitled to withdraw a plea under subsection (2)(a) or (2)(b)[9] if the defendant commits misconduct after the plea is accepted but before sentencing. For purposes of this rule, misconduct is defined to include, but is not limited to: absconding or failing to appear for sentencing, violating terms of conditions on bond or the terms of any sentencing or plea agreement, or otherwise failing to comply with an order of the court pending sentencing. [MCR 6.310(B)(3).]

Gooldy indisputably failed to appear for his initial sentencing. This alone is clearly misconduct as contemplated under MCR 6.310(B)(3), and therefore nullified any entitlement Gooldy may have had to plea withdrawal.[10] Further, Gooldy was charged with possession of drug paraphernalia in September 2021 when arrested for his outstanding warrants, in violation of the trial court's amended release conditions entered when he pleaded guilty. To the extent the trial court erred by denying Gooldy's requested relief because there were "no promises" and no *Cobbs* agreement when our review of the record, as discussed, shows otherwise, the court still reached the correct result given Gooldy's misconduct. See *People v Goold*, 241 Mich App 333, 342 n 3; 615 NW2d 794 (2000) ("Ordinarily, when a lower court reaches the right result, even for the wrong reason, this Court will affirm."). For the forgoing reasons, the trial court did not abuse its discretion by denying Gooldy's request to adjourn sentencing, nor by denying Gooldy's alternate request to withdraw his plea.

---

[9] As indicated above, MCR 6.310(B)(2)(b) allows for plea withdrawal related to a *Cobbs* agreement, specifically when "the plea involves a statement by the court that it will sentence to a specified term or within a specified range, and the court states that it is unable to sentence as stated[.]" MCR 6.310(B)(2)(a) applies when "the plea involves an agreement for a sentence for a specified term or within a specified range, and the court states that it is unable to follow the agreement[.]"

[10] See also *People v Gooldy*, 513 Mich 974, 976; 999 NW2d 41 (2024) (VIVIANO, J., *concurring*) (opining that "even if there had been a *Cobbs* agreement, defendant would no longer have been entitled to withdraw his plea because of his subsequent misconduct."); *id*. ("I am aware of no caselaw suggesting that a defendant who fails to appear for sentencing has a constitutional or other right, once he is later apprehended, to delay his sentencing until his preferred judge returns from a medical leave or to withdraw his plea.").

## C. PROPORTIONALITY OF SENTENCE

Gooldy also contends that his sentence was disproportionate. As discussed, a sentencing court must "take into account the nature of the offense and the background of the offender" to ensure "that the sentence[] imposed . . . [is] proportionate to the seriousness of the matter[]." *Milbourn*, 435 Mich at 651. "An appropriate sentence should give consideration to the reformation of the offender, the protection of society, the discipline of the offender, and the deterrence of others from committing the same offense." *People v Boykin*, 510 Mich 171, 183; 987 NW2d 58 (2022); see also *People v Babcock*, 469 Mich 247, 263; 666 NW2d 231 (2003) ("the more egregious the offense, and the more recidivist the criminal, the greater the punishment"). A sentencing court should consider information in a defendant's PSIR, see *People v Lampe*, 327 Mich App 104, 120; 933 NW2d 314 (2019) (A PSIR is "intended to insure that the punishment is tailored not only to the offense, but also to the offender."), and may consider uncharged offenses, *People v Beck*, 504 Mich 605, 626; 939 NW2d 213 (2019).

As the trial court observed, Gooldy had a considerable criminal history with two prior felonies and five misdemeanors. While Gooldy successfully completed one previous probation term, he since absconded from or otherwise violated probation three separate times, most recently just before the instant offense in 2017. Gooldy repeatedly struggled with substance-abuse components of his probation. In 2017, Gooldy possessed fentanyl while in jail, for which he pleaded guilty alongside the instant offense. The sentencing court also specifically referenced Gooldy's connection to the overdose death of Kimberly Schilling and her unborn child, which led to the investigation of Gooldy and the offense at issue.[11] And during this case, as already covered, Gooldy missed his initial sentencing date and was arrested possessing drug paraphernalia just a month before he was ultimately sentenced.

---

[11] Gooldy's presentence investigation report (PSIR) provides the following background concerning this issue:

> On November 8, 2017, Anthony Schilling called 911 after finding his wife Kimberly Schilling unresponsive in the bathroom with a syringe near her. . . . On November 16, 2017, Kimberly Schilling, having been placed on life support, lost her battle and died, losing her unborn baby in the process.
>
> Anthony Schilling agreed to help officers in their investigation into this matter. He showed officers Facebook messages where his wife had been communicating with a subject named James Gooldy, the defendant in this matter. . . . Search warrants were obtained for the Facebook account of the defendant, and it was clear that he was selling drugs, along with William Blair.

Anthony Schilling agreed to help police set up a drug transaction with Gooldy, which led to the instant offense.

We acknowledge Gooldy's incredibly debilitating and destructive relationship with drugs, and his acceptance of at least some responsibility for his conduct. Indeed, we have no reason to doubt the validity of Gooldy's cited studies concerning the long-term effects of serious drug use on the brain and users' potential for subsequent recovery. Nonetheless, these studies were never presented to or even referenced in the trial court, and attempts to enlarge the record on appeal are generally prohibited. See *Mich AFSCME Council 25 v Woodhaven-Brownstown Sch Dist*, 293 Mich App 143, 146; 809 NW2d 444 (2011) (declining to consider evidence not before the trial court when it decided the motion at issue). Further, Gooldy merely cites studies concerning addiction and recidivism generally, with no connection to his own circumstances apart from saying that one study "explained" his "relapse"—notably without any support from an expert to reach that conclusion.[12] Therefore, even considering these studies, Gooldy has not met his burden to demonstrate that his within-guidelines sentence was disproportionate to *his* particular circumstances, nor to those of the offense at issue. See *Posey*, 512 Mich at 357-359; *Steanhouse*, 500 Mich at 459-460.

The record reflects that the sentencing court was readily aware of Gooldy's history of addiction, which was documented in Gooldy's PSIR and discussed at sentencing, and considered this in conjunction with the other pertinent circumstances. And Gooldy does not argue that the trial court lacked or misconstrued any information concerning his drug use, that it improperly failed to consider his addiction as mitigating, or that his trial counsel was ineffective for failing to present any pertinent information—or for any other deficiency—regarding this matter. The trial court also held valid concerns about Gooldy's rehabilitation potential given his prior failures in this regard.

---

[12] Notably, our Court recognized in *People v Bennett*, 335 Mich App 409, 429; 966 NW2d 768 (2021), that "[o]ur justice system generally regards an offender who commits a crime while suffering from undiagnosed or untreated mental illness as less deserving of the harshest punishments." Substance use disorder is unquestionably a mental illness that would mitigate an offender's culpability. But there is no argument presented that Gooldy had or has that diagnosis. In any event, *Bennett* was specifically related to evaluating mental illness in the context of other factors relevant to *juvenile* sentencing, and undisturbed authority from this Court alternatively provides that trial courts need not consider a defendant's mental health or substance abuse history when imposing a sentence, see *People v Johnson*, 309 Mich App 22, 34; 866 NW2d 883 (2015), vacated in part on other grounds 497 Mich 1042 (2015) ("[The d]efendant next argues that the trial court failed to consider various mitigating factors, such as his mental health and substance abuse histories . . . . However, . . . the trial court was not required to consider such mitigating factors when it sentenced him."). And "trial courts are not required to expressly or explicitly consider mitigating factors at sentencing." *People v Bailey*, 330 Mich App 41, 63; 944 NW2d 370 (2019). Gooldy raises no issue with this binding authority, and this Court is bound to follow its own published decisions. MCR 7.215(C)(2) and (J)(1).

Given the totality of the record, Gooldy's sentence was proportionate to the offense and offender, not an abuse of discretion, and Gooldy has not met his burden to show otherwise.

Affirmed.

/s/ Michael F. Gadola
/s/ Sima G. Patel
/s/ Adrienne N. Young