*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

PEOPLE OF THE STATE OF MICHIGAN,

Plaintiff-Appellee,

v

FRANKLIN LEE WILSON,

Defendant-Appellant.

UNPUBLISHED
May 12, 2025
1:39 PM

No. 364541
Tuscola Circuit Court
LC No. 2021-015445-FH

Before: M. J. KELLY, P.J., and SWARTZLE and ACKERMAN, JJ.

PER CURIAM.

Defendant appeals by right his jury convictions of first-degree home invasion, MCL 750.110a(2), larceny in a building, MCL 750.360, and larceny of less than $200, MCL 750.356(5). The trial court sentenced him as a fourth-offense habitual offender, MCL 769.12, to 20 to 30 years for first-degree home invasion, 4 to 15 years for larceny in a building, and 185 days for larceny of less than $200. We affirm.

## I. BACKGROUND

This case arises out of the March 9, 2021, home invasion at the Akron, Michigan residence of Mitchell and Sarah Russell.

Testimony at trial established that Sarah was home throughout the day while Mitchell worked in a separate workshop on the property. Sarah left at 2:30 p.m. to pick up two of her children, 11-year-old ER and seven-year-old AR. Before leaving, she made sure that several exterior doors were locked but did not confirm whether the mudroom door was locked. After she left, Mitchell observed a black car with distinctive rims driving toward the home but did not find it suspicious.

When Sarah returned with ER and AR at 3:36 p.m., she noticed a black Dodge Charger idling in the driveway with something hanging from the rearview mirror. Upon opening the garage door, she found cabinets open and tools scattered. She called Mitchell to ask why he left the garage in that state, and he replied that he had not. When she entered the house through the garage, she

discovered the interior had been ransacked. Still on the phone with Mitchell, he instructed her to leave the home and then called 911.

Meanwhile, ER retrieved a BB gun from the garage and entered the house. He heard a creaking sound above him and hid, eventually observing a man descending the stairs carrying a red storage tote filled with two PlayStation 4 consoles, a headset, and sneakers. The man wore a black sweatshirt with the hood pulled over his head and a red bandana below his nose, covering his mouth. When ER confronted him, the man said, "Okay, dude, I'm dropping it," and then fled out the front door, leaving the tote behind. He entered the black Dodge Charger and drove away. ER later identified defendant as the intruder.

Law enforcement arrived shortly thereafter and found two checks on the sidewalk—along the suspect's path of flight—made payable to defendant and his mother. The Russells reported that baseball cards and cologne had been stolen.

The next day, Mitchell spotted the same vehicle in Sebewaing, parked near a pizzeria. He reported it to law enforcement.

Several days later, based on the checks found at the scene, Akron Police Chief Matthew Simerson presented ER with a six-person lineup that included defendant's photo. ER identified defendant.

Police executed a search warrant at the home of defendant's mother, located near the pizzeria. Simerson observed a black Dodge Charger with a playing card hanging from the rearview mirror—matching the vehicle described by the Russells. Sarah later confirmed the vehicle matched the one at the scene of the home invasion.

At trial, the jury convicted defendant, and the trial court sentenced him as noted above. Defendant then moved for a new trial or evidentiary hearing, alleging ineffective assistance of counsel for failing to retain an identification expert. After holding a *Ginther*[1] hearing, the trial court denied the motion, concluding defendant had not shown a different outcome was reasonably probable. Defendant now appeals.

## II. DISCUSSION

### A. INEFFECTIVE ASSISTANCE OF COUNSEL

Defendant first asserts that the trial court erred by denying his motion for a new trial because his trial counsel rendered ineffective assistance of counsel by failing to consult and call an identification expert at trial to rebut ER's identification of defendant.

"Whether a defendant has received ineffective assistance of counsel is a mixed question of fact and constitutional law." *People v Yeager*, 511 Mich 478, 487; 999 NW2d 490 (2023). "A judge must first find the facts, then must decide whether those facts establish a violation of the

---

[1] *People v Ginther*, 390 Mich 436; 212 NW2d 922 (1973).

defendant's constitutional right to the effective assistance of counsel." *Id*. (citation omitted). We review the trial court's factual findings for clear error and review de novo questions of constitutional law. *Id*. "The trial court's findings are clearly erroneous if, after we have reviewed the entire record, we are definitely and firmly convinced that it made a mistake." *People v Johnson*, 342 Mich App 90, 93-94; 992 NW2d 668 (2022) (citation omitted). We review a trial court's decision on a motion for a new trial for an abuse of discretion. *People v Muniz*, 343 Mich App 437, 441; 997 NW2d 325 (2022). A trial court abuses its discretion when its decision falls outside the range of reasonable and principled outcomes, *id*., or when it makes an error of law, *People v Franklin*, 500 Mich 92, 100; 894 NW2d 561 (2017).

Under both the Michigan and United States Constitutions, criminal defendants have the right to the assistance of counsel. Const 1963, art 1, § 20; US Const, Am VI. "This right guarantees the effective assistance of counsel." *Yeager*, 511 Mich at 488, citing *Strickland v Washington*, 466 US 668, 686; 104 S Ct 2052; 80 L Ed 2d 674 (1984). To obtain a new trial on the basis of ineffective assistance of counsel, "a defendant must show that (1) counsel's performance fell below an objective standard of reasonableness and (2) but for counsel's deficient performance, there is a reasonable probability that the outcome would have been different." *People v Trakhtenberg*, 493 Mich 38, 51; 826 NW2d 136 (2012). "A reasonable probability is a probability sufficient to undermine confidence in the outcome." *People v Abcumby-Blair*, 335 Mich App 210, 228; 966 NW2d 437 (2020) (quotation marks and citation omitted).

A defendant establishes deficient performance by demonstrating that "counsel made errors so serious that counsel was not performing as the counsel guaranteed by the Sixth Amendment." *People v Cooper*, 309 Mich App 74, 80; 867 NW2d 452 (2015) (quotation marks and citation omitted). Counsel is presumed effective, and a defendant alleging ineffective assistance "must overcome the strong presumption that counsel's challenged actions were sound trial strategy." *Id*. "This Court does not second-guess counsel on matters of trial strategy, nor does it assess counsel's competence with the benefit of hindsight." *People v Traver (On Remand)*, 328 Mich App 418, 422-423; 937 NW2d 398 (2019) (quotation marks and citation omitted).

The decision to retain witnesses—including experts—is a matter of trial strategy, and "the failure to call a witness can constitute ineffective assistance of counsel only when it deprives the defendant of a substantial defense." *People v Payne*, 285 Mich App 181, 190; 774 NW2d 714 (2009) (quotation marks and citation omitted). "Yet a court cannot insulate the review of counsel's performance by calling it trial strategy." *Trakhtenberg*, 493 Mich at 52. Counsel "has a duty to make reasonable investigations or to make a reasonable decision that makes particular investigations unnecessary." *Strickland*, 466 US at 691. Accordingly, we must determine "whether the strategic choices were made after less than complete investigation, and any choice is reasonable precisely to the extent that reasonable professional judgments support the limitations on investigation." *Trakhtenberg*, 493 Mich at 52 (cleaned up).

Counsel, who was the fourth attorney appointed to represent defendant in this case, testified at the evidentiary hearing that he received and reviewed all discovery upon his appointment. To prepare for trial, he met with defendant numerous times, consulted defendant's prior appointed attorneys, reviewed the discovery and a transcript of the preliminary examination, and conducted legal research concerning identification issues. Based on his review of the evidence and legal research, he concluded that the facts did not support a mistaken-identity argument, noting ER's

proximity to the intruder, the daylight conditions during the home invasion, and other corroborating evidence, including the checks found at the scene and the Russells' description of the suspect vehicle matching that of defendant's vehicle. He therefore concluded that calling an identification expert would only emphasize that ER identified defendant and instead opted to cast doubt on the reliability of that identification by attempting to "spin [ER] around a little bit and get [ER] confused" on cross-examination.

Defendant has not established that counsel's decision not to call an identification expert fell below an objective standard of reasonableness. Defendant asserts that the decision was objectively unreasonable because it was made without first consulting an expert to learn what testimony he or she could offer—i.e., after less than complete investigation. But the record does not support that claim. Rather, the testimony at the evidentiary hearing demonstrates that counsel made the decision not to consult an expert after reviewing the relevant evidence, meeting with defendant, conducting legal research regarding eyewitness identification, and concluding that the facts did not support a mistaken-identity argument. The record therefore demonstrates that counsel complied with his "duty to make reasonable investigations or to make a reasonable decision that makes particular investigations unnecessary." *Strickland*, 466 US at 691. Based on his investigations, counsel made a strategic determination that presenting expert testimony on the issue would shine a spotlight on ER's identification to defendant's detriment, and we will not "second-guess counsel on matters of trial strategy." *Traver*, 328 Mich App at 422 (citation omitted).

Defendant posits that counsel's decision not to call an identification expert was necessarily made after an incomplete investigation because counsel did not consult an expert to learn what testimony he or she could offer at trial. This argument is unpersuasive. As our Supreme Court recognized in *Trakhtenberg*, the failure to consult an expert constitutes ineffective assistance "when counsel had neither the education nor the experience necessary to evaluate the evidence and make for himself a reasonable, informed determination as to whether an expert should be consulted or called to the stand." 493 Mich at 54 n 9 (cleaned up). Counsel, who had practiced criminal law for 24 years at the time of defendant's trial, educated himself on the reliability of eyewitness identifications by conducting legal research. Indeed, at the *Ginther* hearing, counsel recited many of the factors affecting reliability that he identified through his research and explained why those factors did not support a mistaken-identity argument. Accordingly, the record does not support defendant's assertion that counsel lacked the education or experience to make a reasonable and informed decision on that issue without first consulting an identification expert. Defendant has therefore failed to establish that trial counsel's decision not to consult an identification expert fell below an objective standard of reasonableness.

Nor has defendant established that, but for counsel's purportedly deficient performance, there is a reasonable probability that the outcome at trial would have been different. Defendant claims he was prejudiced by trial counsel's failure to present expert testimony because such testimony would have undermined the reliability of ER's identification, thereby encouraging the jury to entertain innocent explanations for the other inculpatory evidence. As an initial matter, it is difficult to imagine what innocent explanations could account for the checks payable to defendant and his mother left in the intruder's path of flight or for the presence of defendant's vehicle at the Russell home during the home invasion. Defendant suggests that the jury might have "entertained the very plausible scenario" that the intruder stole the checks from defendant and left them at the scene or that the checks "could have gotten at the scene through the unfortunate

happenstance of blowing out the window of his car while he sped by the house." But neither scenario explains the presence of defendant's vehicle at the Russell home when the home invasion transpired.

Further, counsel's attempt to undermine the reliability of the identification through cross-examination was effective, even if ultimately unsuccessful. When asked on direct examination whether the intruder he saw was in the courtroom, ER apparently expressed visible hesitation before identifying defendant, who was seated next to counsel at the defense table. On cross-examination, counsel questioned ER about his hesitation, and ER admitted that, for "a couple of seconds," he thought counsel could have been the intruder. Counsel also elicited testimony that ER only saw the intruder—who wore a mask over his mouth and a hood over his head—for three to four seconds, and ER could not recall whether the intruder wore glasses or whether he saw the intruder's eyes.

Notwithstanding ER's admitted hesitation in identifying defendant and inability to recall details about the intruder's face, the jury found the evidence sufficient to establish that defendant committed the instant offenses beyond a reasonable doubt. Defendant has not demonstrated a reasonable probability that, had counsel further undermined the reliability of the identification by calling an expert, a different outcome would have resulted.

## B. PROPORTIONALITY OF SENTENCE

Defendant next submits that his within-guidelines sentence for first-degree home invasion violates the principle of proportionality.

"The standard of review to be applied by appellate courts reviewing a sentence for reasonableness on appeal is an abuse of discretion." *People v Dixon-Bey*, 321 Mich App 490, 520; 909 NW2d 458 (2017) (cleaned up). This standard of review applies to both within-guidelines sentences and sentences that depart from the guidelines. *People v Posey*, 512 Mich 317, 352; 1 NW3d 101 (2023) (opinion by BOLDEN, J.); *id*. at 361 (CAVANAGH, J., concurring); *id*. at 413 (WELCH, J., concurring). "The relevant question for appellate courts reviewing a sentence for reasonableness is whether the trial court abused its discretion by violating the principle of proportionality." *Dixon-Bey*, 321 Mich App at 520 (cleaned up). "A trial court abuses its discretion if the imposed sentence is not 'proportionate to the seriousness of the circumstances surrounding the offense and the offender.' " *People v Ventour*, ___ Mich App ___, ___; ___ NW3d ___ (2023) (Docket No. 363922); slip op at 7, quoting *People v Steanhouse*, 500 Mich 453, 459-460; 902 NW2d 327 (2017).

Although the sentencing guidelines are advisory, "they remain a highly relevant consideration in a trial court's exercise of sentencing discretion." *People v Lockridge*, 498 Mich 358, 391; 870 NW2d 502 (2015). Trial courts must consult the guidelines when imposing a sentence. *Id*. "[A] judge helps to fulfill the overall legislative scheme of criminal punishment by taking care to assure that the sentences imposed across the discretionary range are proportionate to the seriousness of the matters that come before the court for sentencing." *People v Milbourn*, 435 Mich 630, 651; 461 NW2d 1 (1990), abrogation in part on other grounds recognized by *Steanhouse*, 500 Mich at 477. Under the sentencing guidelines, the trial court is required to score both offense and prior record variables to determine the appropriate sentence range. *People v*

*Babcock*, 469 Mich 247, 263; 666 NW2d 231 (2003). Offense variables (OVs) consider the nature and severity of the sentencing offense, and prior record variables (PRVs) consider the defendant's criminal history. *Id*. at 263-264. "Therefore, the appropriate sentence is determined by reference to the principle of proportionality; it is a function of the seriousness of the crime and of the defendant's criminal history." *Id*. at 264.

In making a proportionality assessment, a trial court must consider the nature of the offense and the background of the offender. *Milbourn*, 435 Mich at 651. Trial courts may consider a variety of factors in assessing the proportionality of a sentence including:

> (1) the seriousness of the offense; (2) factors that were inadequately considered by the guidelines; and (3) factors not considered by the guidelines, such as the relationship between the victim and the aggressor, the defendant's misconduct while in custody, the defendant's expressions of remorse, and the defendant's potential for rehabilitation. [*People v Lampe*, 327 Mich App 104, 126; 933 NW2d 314 (2019) (quotation marks and citation omitted).]

Under the principle of proportionality, "the key test is whether the sentence is proportionate to the seriousness of the matter, not whether it departs from or adheres to the guidelines' recommended range." *Dixon-Bey*, 321 Mich App at 521 (quotation marks and citations omitted).

Here, defendant's minimum sentence of 240 months' imprisonment for first-degree home invasion falls within the sentencing guidelines' minimum range of 78 to 260 months. "When a trial court sentences a defendant within the guidelines' recommended range, it creates a presumption that the sentence is proportionate." *Ventour*, ___ Mich App at ___; slip op at 7 (quotation marks and citation omitted). Defendant's sentence is therefore presumptively proportionate, and "defendant bears the burden of demonstrating that [his] within-guidelines sentence is unreasonable or disproportionate." *Id*. (quotation marks and citation omitted). A defendant may rebut that presumption by "presenting unusual circumstances that would render the presumptively proportionate sentence disproportionate." *Id*. at ___; slip op at 8 (cleaned up).

On appeal, defendant does not allege the existence of unusual circumstances that would rebut the presumption of proportionality. Instead, defendant asserts that the guidelines minimum range is "an incomplete measure of proportionality" because the guidelines only consider factors that increase punishment and do not consider mitigating factors.

That argument is without merit. The power to prescribe punishment is vested in the Legislature, and it is the Legislature that promulgates the sentencing guidelines. *People v Hegwood*, 465 Mich 432, 436, 439; 636 NW2d 127 (2001). It is therefore within the Legislature's purview to determine which variables trial courts must score at sentencing and how those scores affect the guidelines minimum range. Trial courts are required to score the offense and prior record variables promulgated by the Legislature to determine the appropriate sentence range. *Babcock*, 469 Mich at 263. Accordingly, defendant's argument that the guidelines only consider factors that increase punishment is an issue for the Legislature, not the judiciary.

Further, our Supreme Court in *Posey* held that a within-guidelines sentence is presumed proportionate, and the burden is on the defendant to rebut that presumption. *Posey*, 512 Mich

at 357 (opinion by BOLDEN, J.); *id*. at 361 (CAVANAGH, J., concurring); *id*. at 390-391 (WELCH, J., concurring). This Court in *Ventour* also held that, to overcome the presumption of proportionality, a defendant must "present unusual circumstances that would render the presumptively proportionate sentence disproportionate." ___ Mich App at ___; slip op at 8 (cleaned up). We are bound by that precedent. See *People v Robar*, 321 Mich App 106, 117; 910 NW2d 328 (2017) (holding that this Court is "bound to follow decisions of the Supreme Court unless those decisions have clearly been overruled or superseded"); see also MCR 7.215(J)(1).

Defendant additionally claims that the minimum range of 78 to 260 months' imprisonment was too wide and "left the trial court with extremely broad and undefined discretion." We disagree. The trial court's discretion was precisely defined: it could impose a presumptively proportionate sentence within the guidelines minimum range of 78 to 260 months, or it could impose a departure sentence if warranted by the circumstances of the offense and the offender. The trial court exercised that discretion by finding that a within-guidelines minimum sentence of 240 months was proportionate.

Moreover, the breadth of the guidelines minimum range was a consequence of defendant's status as a fourth-offense habitual offender. Defendant was assessed 130 points for the PRVs and 20 points for the OVs. Under the sentencing guidelines in effect at the time, that assessment resulted in a guidelines minimum range of 78 to 130 months before applying the habitual offender status. Defendant's habitual offender status increased the upper bound of the range to 260 months. The resulting "extremely broad" range was therefore a product of scoring the guidelines as promulgated by the Legislature and applying the habitual offender enhancement. In short, the guidelines minimum range here was "a function of the seriousness of the crime and of the defendant's criminal history." *Babcock*, 469 Mich at 264.

Defendant also contends that the sentence is disproportionate because the trial court relied on factors already considered by the guidelines—and on defendant's substance abuse, which he asserts is a mitigating factor—to justify a sentence at the high end of the guidelines minimum range. But a trial court is not required to articulate any justification when imposing a sentence within the guidelines minimum range. *People v Posey (On Remand)*, ___ Mich App ___, ___; ___ NW3d ___ (2024) (Docket Nos. 345491 and 351834); slip op at 4. And because the sentence was within the guidelines range, it was wholly appropriate for the trial court to rely on factors already contemplated by the guidelines in determining what sentence within that range was proportionate to the offense and the offender. That argument is therefore without merit.

Defendant finally argues that his sentence is disproportionate to the circumstances of the offense and the offender because the home invasion here "falls toward the [lower] end of the spectrum of egregiousness," and defendant, who is a single parent to two young boys, struggles with substance abuse disorder. We disagree.

With respect to the egregiousness of the offense, defendant asserts that the instant home invasion warranted a sentence on the lower end of the spectrum because the offense was committed when no one was inside the home and did not involve violence or threats of violence. That argument is unpersuasive. Although no one was inside the home when defendant initially entered and ransacked it, Mitchell was in an adjacent structure on the property, and Sarah, AR, and ER arrived during the home invasion. ER was so afraid that he armed himself with a BB gun before

confronting defendant. In her victim impact statement, Sarah stated that the family felt violated by the home invasion, defendant "took [their] safety away in [their] home," and ER and AR began counseling as a result.

Further, the only offense variables for which defendant was assessed points were OV 4 (psychological injury to victim) and OV 13 (continuing pattern of criminal behavior). All other offense variables—including OV 1 (aggravated use of a weapon), OV 2 (lethal potential of weapon possessed or used), and OV 3 (physical injury to victim)—were assessed at zero. In other words, defendant's offense variable score, which considers the nature and severity of the offense, already reflects that defendant did not use violence or threats of violence during the home invasion. The absence of violence is therefore not an unusual circumstance sufficient to rebut the presumption of proportionality where the guidelines scoring already accounts for that fact.

Turning to the circumstances surrounding the offender, it is true that the presentence investigation report details a long history of substance abuse disorder beginning when defendant was 14 years old. The report also confirms that defendant is a single parent of twin boys. However, defendant cites no authority holding that a substance abuse disorder or single-parent status constitutes an unusual circumstance sufficient to rebut the presumption of proportionality. Moreover, a trial court is not required to consider a defendant's substance abuse history when imposing a sentence. *People v Johnson*, 309 Mich App 22, 34; 866 NW2d 883 (2015), vacated in part on other grounds 497 Mich 1042 (2015). To the extent that defendant argues his status as a single parent is a mitigating factor, "trial courts are not required to expressly or explicitly consider mitigating factors at sentencing." *People v Bailey*, 330 Mich App 41, 63; 944 NW2d 370 (2019).

Even if we accepted defendant's claim that his substance abuse disorder and single-parent status weigh in favor of a lower sentence, his extensive criminal history and demonstrated lack of potential for rehabilitation support the proportionality of the sentence imposed. In pronouncing the sentence, the trial court cited defendant's extensive criminal history—13 prior misdemeanor convictions and 12 prior felony convictions—and noted that defendant had previously violated probation or parole numerous times, resulting in at least seven revocations. The court considered the sentencing objectives of punishment, deterrence, and rehabilitation, and it found that the sentence imposed was proportionate to the circumstances surrounding the offense and the offender.

The trial court's findings were supported by the presentence investigation report. That report also indicates that, at the time of the instant home invasion, defendant was on bond for multiple offenses, including: third-degree home invasion; larceny of more than $1,000 but less than $20,000; breaking and entering a building with intent; and larceny of a firearm. Accordingly, even if defendant's substance abuse disorder and family responsibilities might support a sentence toward the lower end of the range, he has failed to rebut the presumption of proportionality given the significant countervailing considerations—most notably, his criminal history—which justified the sentence imposed.

Affirmed.

/s/ Michael J. Kelly
/s/ Brock A. Swartzle
/s/ Matthew S. Ackerman

-8-